In re the MARRIAGE OF K–Lyn EARSA and Mark Alan Earsa.

Upon the Petition of K–Lyn Earsa n/k/a K–Lyn Nelson, Petitioner–Appellee,

And Concerning Mark Alan Earsa, Respondent–Appellant.

No. 90–1490.

Court of Appeals of Iowa.

Nov. 26, 1991.

Eric Borseth of Borseth Law Office, Pleasant Hill, for respondent-appellant.

David P. McManus of Glasson, Grove, Sole & McManus, Cedar Rapids, for petitioner-appellee.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Justice.

Respondent-appellant Mark Alan Earsa challenges the visitation and economic provisions in his dissolution decree. Mark married petitioner-appellee K-lyn Earsa in June 1982. The parties have one child, Bart, born in December of 1984. The parties have joint custody of Bart, and K-lyn has his physical care. Mark was ordered to pay child support. The award of physi-

cal care and the child support award are not challenged on appeal. We affirm as modified.

The trial court divided the property. The parties' investments were awarded to Mark. The residence was awarded to K-lyn, and she was ordered to pay the mortgage. Mark was also directed to pay her $5,000. The result was Mark received property valued at about $70,000, and K-lyn received property valued at about $25,000. The trial court also ordered Mark to pay K-lyn $1.00 per year in alimony. Mark contends this allocation was not equitable and failed to give adequate consideration to the substantial assets he brought into the marriage.

■■■ A dissolution of marriage case is tried in equity. See In re Marriage of Vrban, 359 N.W.2d 420, 423 (Iowa 1984). Our review is de novo. Iowa R.App.P. 4.

K-lyn was born in 1960. She is currently employed at Souvenir, Inc., in Cedar Rapids. She earns about $1,500 a month. K-lyn brought nothing of value into the marriage. She inherited $13,000 from her father after the parties had separated. She claims all this money has been spent on support and attorney fees. She contends she paid about $7,000 toward attorney fees. She was employed outside the home during the marriage. She testified all of her salary was spent for family expenses and she has not saved any money.

Mark, who was born in 1953, was employed at Wilson Foods, later known as Farmstead, before and during the marriage. Farmstead was closed in March 1990, and Mark lost his job. The closure was the result of a decline of profits in the meat industry. Mark went on unemployment and has been job seeking. The closure of Farmstead has contributed to a decline in the jobs available for people of Mark's position in the Cedar Rapids area. Despite extensive efforts, Mark has been unable to find a job. He has one year of college, and at trial testified if he did not find a job soon he would return to college on a full-time basis to get his degree. Mark receives unemployment of $188 a week. His unemployment benefits were scheduled to expire when the decree was entered. At the time of marriage, Mark had assets, including a personal residence, valued at about $80,000. He inherited $3,000 during marriage. The assets the couple had at the time of the dissolution were the assets Mark had when they were married. The assets had remained in Mark's name during marriage. Some of the assets had increased in value during the marriage.

■■■ Mark contends the property division and alimony awards were not equitable. Whether the award was equitable depends on the facts of this particular case. See Vrban, 359 N.W.2d at 427. A justified property division is one that is equitable under the circumstances. In re Marriage of Stewart, 356 N.W.2d 611, 612 (Iowa App.1984). We consider the property division and alimony together in evaluating their individual sufficiency; they are neither made nor subject to evaluation in isolation from one another. See In re Marriage of Griffin, 356 N.W.2d 606, 608 (Iowa App.1984).

■■■ The parties spent their wages for living expenses during the marriage. The available assets are the assets Mark brought into the marriage and the accumulation thereof. Mark contends it was not equitable for the trial court to award a portion of these assets to K-lyn. This was an eight-year marriage. K-lyn worked outside the home during the marriage, she contributed to the family expenses, allowing Mark to maintain his savings. The trial court's decision leaves Mark with less property than he brought into the marriage. Under Iowa Code section 598.21(1) (1989), we are directed to consider property brought to the marriage. Additionally, we find no factors that justify division of Mark's inherited property.

We modify the property division to strike the provision that Mark pay K-lyn $5,000. We impose a lien in the amount of $8,000 in Mark's favor against the personal residence given to K-lyn. The lien shall be due when the first of the following events occurs: K-lyn vacates or sells the premises,

Bart graduates from high school, or Bart reaches his nineteenth birthday. The lien shall draw interest at the rate of 5% per year, payable annually. A low interest rate will make it easier for K-lyn to keep the home for the parties' child.

The trial court awarded K-lyn alimony of $1.00 per year, payable on the last day of each year. The trial court found the award justified because K-lyn had potential health problems. Mark contends the award of alimony was not equitable and was not supported by the record.

■ Spousal support may be granted in a dissolution. Iowa Code § 598.21(3). A purpose of spousal support or alimony is to rectify the inequities of a marriage, and to compensate a spouse who leaves the marriage at a disadvantage.

Under section 598.21(3)(a-j), the court is directed to consider all of a series of factors. In assessing this issue we look at these factors and applicable case law. *See In re Marriage of Sell*, 451 N.W.2d 28, 31 (Iowa App.1989); *In re Marriage of Hogeland*, 448 N.W.2d 678, 680–82 (Iowa App. 1989); *In re Marriage of Dahl*, 418 N.W.2d 358, 361 (Iowa App.1987); *Griffin*, 356 N.W.2d at 608–09; *In re Marriage of Estland*, 344 N.W.2d 276, 281 (Iowa App. 1983).

■ K-lyn does not have the profile of a spouse who is a candidate for alimony. K-lyn has been employed outside the home throughout the marriage. Her earning capacity has been similar to Mark's. She has, therefore, during the marriage made similar FICA contributions. Her social security coverage is for both disability and retirement. She has both medical and disability insurance through her employer. She has two vested retirement plans. She is currently employed with job security. Mark is unemployed. His unemployment is about to run out. He sees the need to obtain additional education to enhance his employment opportunities. He will need to use his savings to obtain further education.

K-lyn has had surgery for a precancerous condition and has a greater possibility of having cancer than the general population. She argues if she has health problems, it should be Mark's responsibility to assist with medical bills and support. Mark is older than K-lyn. There is a greater possibility he will suffer a disease related to aging sooner than K-lyn. The physical health of the parties is one of the factors required to be considered under section 598.21(3)(b). However, the speculation of a possible future medical problem is not sufficient to justify an award of alimony to K-lyn under the facts of this record. The tie that the alimony award leaves unsevered is not necessary. K-lyn leaves with about $17,000 in assets, the majority of which were assets Mark brought into the marriage. Where there are sufficient assets, it is better to resolve any economic differences in the property division. We strike the alimony award made in the decree.

Mark complains he should have been given additional visitation of half a day on Bart's birthday. The parties had stipulated to visitation before trial, and the stipulation included the birthday provision. The trial court did not make provision for birthday visitation in the decree. K-lyn agrees this modification can be made because it conforms to her agreement at trial. We modify the decree to enter the following provision:

Mark shall have visitation on Bart's birthday for a period of one-half of that day and the parties will mutually agree on whether that shall be in the morning or afternoon, depending on their schedules.

Each party shall pay his or her own attorney fees, and one-half the court costs.

AFFIRMED AS MODIFIED.