# IN THE COURT OF APPEALS OF IOWA

No. 17-0904
Filed September 26, 2018

**IN RE THE MARRIAGE OF JEFFREY J. MONAHAN
AND RONAE L. MONAHAN**

**Upon the Petition of
JEFFREY J. MONAHAN,**
        Petitioner-Appellee,

**And Concerning
RONAE L. MONAHAN n/k/a RONAE L. SCHMEITS,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Shelby County, Gregory W.

Steensland, Judge.

        Wife challenges the economic provisions of the decree dissolving her

marriage. **AFFIRMED AS MODIFIED AND REMANDED.**

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, PC, West Des

Moines, for appellant.

        Michael J. Murphy of Murphy & Murphy Law Offices, PC, Council Bluffs, for

appellee.

        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

This appeal arises out of the acrimonious dissolution of the thirty-year marriage of Jeff and Ronae Monahan. During the course of the proceedings, there were allegations of a murderous plot, domestic abuse, embezzlement, theft, fraud, waste, and dissipation of marital assets, among other things. Some of the accusations were well-founded. For example, in violation of a court order, Ronae entered the marital home and took a substantial amount of the jewelry and personal property. Ronae also had her employee burn relevant business records. In addition, the district court found there is some evidence supporting Jeff's contention that Ronae investigated how to kill Jeff by poisoning him with Coumadin.

The district court received the evidence over the course of a four-day trial, divided the marital property, ordered Jeff to pay Ronae an equalization payment, and awarded Ronae alimony:

> Jeff shall pay a cash settlement to Ronae as part of the distribution of assets in the total amount of $294,480. That cash settlement shall be payable in 7 equal annual installments of $42,068.57. The first installment is due July 1, 2017, and installments in that same amount are due on July 1 of each subsequent year until the cash settlement is paid. This cash settlement is a judgment against Jeff in favor of Ronae. As long as payment [sic] are timely made they shall not accrue interest.
> Commencing July 1, 2024, Jeff shall pay spousal support to Ronae in the amount of $2,000 per month. This spousal support shall continue until either party dies, Ronae remarries, or Ronae reaches the age of 66, whichever comes first.

On appeal, Ronae contends the district court failed to do equity in dividing the marital property and awarding her spousal support. She also contends the

award of spousal support should be secured by a life insurance policy insuring Jeff's life. Finally, she seeks trial and appellate attorney fees.

I.

Our review in a marriage action is de novo. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons. This means we give weight to the district court's findings of fact. This also means we will affirm the district court unless the district court failed to do substantial equity." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). We review the district court's award of trial attorney fees for an abuse of discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).

II.

We first address the district court's division of the parties' marital property. "In dissolution-of-marriage cases, marital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21[(5)]." *McDermott*, 827 N.W.2d at 678 (alteration in original) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007)). A non-exhaustive list of the relevant statutory considerations include "[t]he length of the marriage," "property brought [in]to the marriage," "contribution[s] of each party to the marriage," "[t]he age and . . . health of the parties," "[t]he earning capacity of each party," "[t]he amount and duration of [any spousal support] order[s]," and "[o]ther economic circumstances of [the] part[ies]." Iowa Code § 598.21(5) (2014). In dividing the property, the district court must identify and value all assets subject to division. *See In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). "To value the property, we refer to the parties'

stipulated value of most assets." *McDermott*, 827 N.W.2d at 679. "Because of the difficulty surrounding valuation, appellate courts give much leeway to the trial court. A trial court's valuation will not be disturbed when it is within the range of evidence. Moreover, appellate courts defer to a trial court's valuations when accompanied by supporting credibility findings or corroborating evidence." *Keener*, 728 N.W.2d at 194 (citations omitted).

As relevant here, the record reflects the following with respect to the parties' employment and financial circumstances. At the time of trial, Jeff was fifty-one years old. He retired from the National Guard after twenty years of service, and he is eligible for pension benefits due to his service. He is the longtime owner and operator of a profitable auto-body shop. Ronae was fifty-three at the time of trial. She is a college graduate and holds a degree in business in addition to a cosmetology license. In 2000, Ronae opened a salon and spa with Jeff. The parties owned and operated the salon and spa until they separated in 2014. Ronae testified the salon was very successful. Although Ronae was the full-time owner-operator of the salon and spa, she has drawn Social Security Disability payments for the last fifteen years. Over the course of the marriage, the parties obtained a significant amount of property subject to division. They had a marital home, the auto-body shop, the salon and spa, tools and inventory, and farmland. They owned several cars, five four-wheelers, and a significant amount of jewelry and other personal property.

The first question presented is whether the district court inequitably divided the parties' property by failing to treat Jeff's pension as marital property and divide the same. Ronae requests she be awarded one-half of the pension. Jeff defends

the district court's decree on the ground the National Guard pension has no present value because Jeff "will not receive any benefits . . . until he reaches the age of sixty-five." He therefore contends the failure to divide the pension was equitable. We disagree. "Under Iowa law pensions are characterized as marital assets, subject to division in dissolution actions just as any other property." *In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996). More specifically, "[i]n Iowa, military pensions are considered marital property and divided as such in dissolution proceedings." *In re Marriage of Gahagen*, No. 03-1731, 2004 WL 1813601, at *3 (Iowa Ct. App. Aug. 11, 2004). We modify the decree to provide Jeff's pension should be classified as marital property with Ronae to receive one-half of the marital share of the pension as determined by the *Benson* formula.

We find the remainder of Ronae's challenges to the property division to be without merit. Other than failing to divide Jeff's pension, the district court sorted through the evidence, identified the marital property, valued the martial property and debts, and divided the assets and liabilities in an equitable fashion. The valuations of the property are within the range of evidence, and we will not disturb those valuations. *See Keener*, 728 N.W.2d at 194. Pursuant to those valuations, Ronae will receive a substantial and equitable equalization payment over the course of several years. We do modify the decree to provide the equalization payment shall be entered as a judgment and shall bear interest at the statutory rate as set forth in Iowa Code section 535.3(1).

In sum, the district court equitably divided the parties' marital assets and liabilities with the exception of failing to divide Jeff's pension from the National Guard and in failing to provide for statutory interest on the judgment. We modify

the decree to provide that Jeff's pension shall be divided subject to the *Benson* formula and to provide for interest on the equalization payment at the statutory rate. We remand this matter to the district court to apply the formula to the facts and circumstances of this case and to enter a qualified domestic relations order implementing the division.

III.

We next address the issue of spousal support. The district court awarded Ronae spousal support in the amount of $2000 per month commencing on July 1, 2024, after Jeff pays the final installment of the equalization payment. The spousal support will end when either party dies, Ronae remarries, or Ronae reaches the age of sixty-six, whichever comes first. On appeal, Ronae seeks $6000 per month, retroactively applied from July 1, 2017, terminable at either parties' death or Ronae's remarriage.

Spousal support "is not an absolute right," but it may be appropriate depending upon the facts and circumstances of the case. *See In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). Iowa law generally recognizes three forms of spousal support: traditional, rehabilitative and reimbursement. *Id.* at 826. Given the length of the marriage, the parties agree an award of traditional spousal support is appropriate here. *See In re Marriage of Gust*, 858 N.W.2d 402, 411 (Iowa 2015) (identifying twenty years as the "durational threshold" at which an award of traditional alimony may be appropriate).

The parties disagree regarding the amount and duration of the spousal support award. The amount of the award is predicated on need and ability. *See id.* at 410–11. "[T]he yardstick for determining need has been the ability of a

spouse to become self-sufficient at 'a standard of living reasonably comparable to that enjoyed during the marriage.'" *Id.* at 411 (quoting Iowa Code § 598.21A(1)(f)). To determine need, we look to the earning capability of the spouses using the historical record as an objective starting point. *See id.* We do a similar analysis to determine the ability to pay. *See id.*

In reviewing the evidence presented, we conclude the district court's resolution of the spousal-support issue was inequitable. Here, the district court concluded spousal support was necessary but delayed the payment of such support until after the final payment of the property settlement. While it is correct that "we consider the property division and spousal support provisions together in determining their sufficiency," we conclude it was improper, under the circumstances presented, to delay the payment of spousal support. *See In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). Ronae was entitled to an equitable division of the marital property at the time of the dissolution of the marriage. While the district court allowed for the property settlement to be paid over time due to liquidity constraints, this should not delay the provision of spousal support when such support is determined to be appropriate. We modify the decree to provide for the provision of spousal support commencing on the date of dissolution to be paid monthly thereafter.

We reject Ronae's claim to increase the amount of spousal support. Ronae will receive a substantial equalization payment over the course of seven years, which will bear interest at the statutory rate. Second, Ronae is relatively young and has significant earning capacity. She has a business degree and cosmetology license. She has operated a successful salon for almost fifteen years. Although

she contends she has a medical condition limiting her ability to work, she did not present substantial medical evidence in support of her claim. The fact that Ronae has drawn Social Security disability benefits for the last fifteen years is of limited relevance on this issue; Ronae, by her own admission, has operated full-time a very successful and profitable salon while drawing the disability benefits. The evidence does not show that she would not be able to continue to do so into the future.

Ronae asks this court to order Jeff to purchase a life-insurance policy insuring his life and naming Ronae as a beneficiary so long as he owes her equalization and spousal-support payments. Jeff argues such an order would be inappropriate because Ronae tried to kill Jeff. While Ronae is correct in asserting the district court has the authority to include an insurance provision in the decree, the district court is not required to do so. *See cf. In re Marriage of Debler*, 459 N.W.2d 267, 270 (Iowa 1990) (ordering paying spouse list befitting spouse as beneficiary to life-insurance policy for the duration of the spousal-support award without indicating it is mandatory to do so); *In re Marriage of Mouw*, 561 N.W.2d 100, 102 (Iowa Ct. App. 1997) (reducing life-insurance coverage awarded to secure spousal-support award). Under the unique facts and circumstances of this case, the district court declined to do so:

> One component of the evidence that is disturbing to this Court is Jeff's testimony that shortly after the separation of the parties', he bled in the shower. He believes Ronae attempted to either kill or disable him. While that sounds extreme, it seems to be supported in some sense by the testimony of Katie Murray that Ronae attempted to buy Coumadin from her. Under the circumstances, this Court can understand Jeff's concern.

In light of the circumstances of this case, we decline to order Jeff purchase and maintain a life-insurance policy on his life benefitting Ronae.

We affirm the alimony award as modified in this opinion.

IV.

Finally, we address the issue of trial and appellate attorney fees. Ronae argues the district court abused its discretion in declining to award her trial attorney fees. "An award of attorney fees rests in the sound discretion of the [district] court and [should] not be disturbed on appeal in the absence of an abuse of discretion." *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997). "Whether attorney fees should be awarded depends on the parties' respective abilities to pay, and fees awarded must be fair and reasonable." *See In re Marriage of Schmadeke*, No. 13-1659, 2014 WL 3930470, at *3 (Iowa Ct. App. Aug. 13, 2014) (citations omitted). This was a contentious dissolution proceeding. Both parties probably incurred unnecessary expense by litigating this case in scorched-earth fashion. Ronae used three separate attorneys in this case, one of whom withdrew due to conflicts with Ronae. We cannot say the district court abused its discretion in declining to award fees on the facts presented.

Ronae seeks appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *See In re Marriage of McDermott*, 827 N.W.2d at 687 (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). "In determining whether to award appellate attorney fees, we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *In re Marriage of Okland*,

699 N.W.2d at 270).  After carefully considering each of these factors, we decline to award fees.

V.

We have considered each of the parties' arguments, whether set forth in full herein.  With the exception of the division of Jeff's pension and the omission of statutory interest, we conclude the decree is equitable under the circumstances presented.  We affirm the district court's decree as modified in this opinion and remand this matter for division of Jeff's pension pursuant to the *Benson* formula.

**AFFIRMED AS MODIFIED AND REMANDED.**